UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE NO.: 3:22-cv-09236-MCR-ZCB

THE BURLINGTON INSURANCE COMPANY,
an Illinois corporation,

    Petitioner,

vs.

ROSIE O'GRADY'S, INC., a
Florida Profit Corporation and JEFFREY
SCOTT MCGAUGHEY, individually,

    Respondents.
_____/

**PETITIONER, THE BURLINGTON INSURANCE COMPANY'S
AMENDED PETITION FOR DECLARATORY JUDGMENT**

COMES NOW, Petitioner, THE BURLINGTON INSURANCE COMPANY (TBIC) by and through its undersigned counsel and brings this action for declaratory judgment against Respondents, ROSIE O'GRADY'S, INC., a Florida Profit Corporation and JEFFREY SCOTT MCGAUGHEY, individually, and states as follows:

**NATURE OF THE ACTION**

1. This is an action for Declaratory Judgment to determine TBIC'S obligations under an insurance policy issued to ROSIE O'GRADY'S, INC. (ROSIE O'GRADY'S), as that insurance policy relates to claims of bodily injury asserted against ROSIE O'GRADY'S by JEFFREY SCOTT MCGAUGHEY (MCGAUGHEY).

2. This action for Declaratory Judgment is brought pursuant to 28 U.S.C. § 2201 *et seq.*, for the purpose of determining a question in actual controversy between the parties as described in detail herein.

## JURISDICTION, VENUE AND PARTIES

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy, exclusive of interest and cost, is in excess of $75,000.00.

4. Venue for this matter exists under 28 U.S.C. § 1391(a), as all Respondents reside in the district or maintain business in the district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. At all material times hereto, Petitioner, TBIC, was and is an Illinois corporation with a principal place of business in Hartford, Connecticut and was authorized under the laws of the state of Florida to conduct business as a foreign corporation issuing policies of insurance for delivery to policyholders within Florida pursuant to Florida' surplus lines law.

6. At all material times hereto, Respondent ROSIE O'GRADY'S was and is a Florida Profit Corporation with its principal place of business at 130 East Government Street, Pensacola, Escambia County, Florida.

7. The incident which is the subject of the dispute occurred outside the premises located at 130 East Government Street, Pensacola, Escambia County, Florida.

8. At the of the accident which is the subject of this lawsuit, Respondent JEFFREY SCOTT MCGAUGHEY (MCGAUGHEY) resided and was a citizen of Santa Rosa County, Florida and thus a citizen of the State of Florida.

9. Presently, Respondent JEFFREY SCOTT MCGAUGHEY (MCGAUGHEY) permanently resides in Land O' Lakes, Florida and was a citizen of Pasco County, Florida and thus a citizen of the State of Florida.

10. Therefore, Petitioner is a citizen and/or entity domiciled in a different state from all Respondents.

11. Based on the above, there is complete diversity between the Petitioner and Respondents and the amount in controversy, exclusive of interest or costs, exceeds the jurisdictional requirements for diversity jurisdiction.

12. Accordingly, there is original jurisdiction in this Court and Petitioner respectfully requests this action proceed, pursuant to 28 U.S.C. Section 1332, *et. seq.*

## OPERATIVE FACTS

13. TBIC files this action for declaratory judgment with respect to the claim submitted by ROSIE O'GRADY'S for coverage and/or indemnification of claims raised by MCGAUGHEY in the matter of *Jeffrey Scott McGaugh v. Rosie O'Grady's Inc.,* filed in the Circuit Court of the 1st Judicial Circuit in and for Escambia County, Florida, Case No.: 2019 CA 001078, hereinafter (Underlying Action). *See* Complaint from the Underlying Action attached hereto as **Exhibit "A."**

14. ROSIE O'GRADY'S has sought coverage for the claims raised in the Underlying Action pursuant to a contract of insurance issued by TBIC to ROSIE O'GRADY'S, with the policy period of March 24, 2015 through March 24, 2016, under policy number 446BW31140 (the Policy). *See* the Policy attached hereto as **Exhibit "B."**

15. The Underlying Action involves allegations of bodily injury allegedly sustained by MCGAUGHEY as a result of an incident which occurred during the apprehension, arrest and transport of a patron of ROSIE O'GRADY'S who has been involved in an altercation on July 3, 2015, on ROSIE O'GRADY'S property. **Exhibit "A," paras. 7 through 13.**

16. At the time of the subject incident, MCGAUGHEY was an off-duty police officer working for ROSIE O'GRADY'S in the capacity of a security guard (**Exhibit "A," paras. 7 through 9**) and was an employee of ROSIE O'GRADY'S as defined by the Policy.

17. In the course of MCGAUGHEY's deposition, he testified he was called to assist another officer in breaking up a fight between patrons. MCGAUGHEY was directed to apprehend one of the combatants and place him under arrest. As the the individual was handcuffed and walked to the police vehicle, the individual began to take certain actions suggesting he could escape from his restraints. While MCGAUGHEY was trying to redirect the individual, their feet got tangled and they fell through the front window (already broken) of ROSIE O'GRADY'S. *See* the Deposition of Jeffrey McGaughey taken on October 29, 2021, **pages 41 through 52** attached hereto as **Exhibit "C."**

18. As a result of the subject incident and the injuries allegedly sustained, MCGAUGHEY has asserted one count of Negligence against ROSIE O'GRADY'S. **Exhibit "A"**.

19. Specifically, MCGAUGHEY has alleged:

> 3. The entertainment establishment owned and operated by Rosie O'Grady's, Inc. is known as Seville Quarter. Seville Quarter consists of seven (7) themed rooms, including a pool hall, dance club and many dining and bar options.
>
> 4. The entertainment complex of Seville Quarter is a major site in Pensacola, FL for dancing and drinking and is frequented by hundreds of patrons on any given evening.
>
> 5. Because the establishments within Seville Quarter serve alcohol to its patrons, it is not uncommon for fights or other disorderly behavior to occur.
>
> 6. The Plaintiff and many other law enforcement officers often serve as security of the Seville Quarter complex when they are not serving as Police Officers during their regular duty hours.
>
> 7. On July 3, 2015, the Plaintiff was a duly sworn law enforcement officer employed by the City of Pensacola serving with the Pensacola Police Department.
>
> 8. On July 3, 2015, the Plaintiff was working security at the Seville Quarter complex and was being compensated by the Defendant for his services.

9. During the evening hours of July 3, 2015, the Plaintiff was alerted to the fact that a disturbance was occurring within the Seville Quarter complex.

10. During his participation in the investigation into the disturbance, the Plaintiff determined that a patron of the Seville Quarter complex had been involved in the disturbance, and the Plaintiff apprehended the patron and placed him under arrest.

11. The arrest of the patron by the Plaintiff took place on the sidewalk just outside of the Seville Quarter complex and in front of the bar and dance club known as Rosie O'Grady's.

12. While escorting the suspect back to another location on the exterior of the Seville Quarter complex, the Plaintiff and the suspect lost their balance causing the Plaintiff to fall into a storefront window of Rosie O'Grady's.

13. The Plaintiff reached out to keep himself from falling into the window and in the process the window broke and the Plaintiff's hand was severely cut on a jagged edge of glass.

14. The window that the Plaintiff fell into, which is owned by the Defendant, was not made of safety glass and instead of shattering without harming the Plaintiff, it instead became jagged glass upon breaking and caused great harm to the Plaintiff.

15. The Defendant knew or should have known that the type of glass it used for the windows located at Rosie O'Grady's presented a danger to the Plaintiff or others so situated if one was to encounter the glass with sufficient force.

16. The Defendant knew or should have known that, as a result of the prevalence of the use of alcohol by patrons of its establishment, an accident could occur resulting in forceful contact with the windows of the Defendant's establishment.

20. As a result, MCGAUGHEY has alleged to have, "suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money. The losses are either permanent or continuing and plaintiff will suffer the losses in the future." **Exhibit "A," para. 19.**

## COUNT I – DECLARATORY JUDGMENT

21. TBIC incorporates by reference the allegations contained in paragraphs 1 through 20 above, as if more fully set forth herein at length.

22. ROSIE O'GRADY'S is requesting that TBIC provide it with a defense and indemnification for the damages being asserted by MCGAUGHEY in the Underlying Action.

5

23. At the present time, TBIC is providing a defense to ROSIE O'GRADY'S pursuant to a reservation of rights.

24. Based on the allegations contained in the Complaint filed in the Underlying Action, as well as the sworn testimony of MCGAUGHEY, TBIC asserts there is no coverage for the claims at issue in the Underlying Action in accordance with the terms of the General Liability Insurance Policy issued to ROSIE O'GRADY'S.

25. The insuring agreement contained in the Commercial General Liability Coverage form, no. CG 00 01 12 07, states:

> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
> **SECTION 1 – COVERAGES**
> **Coverage A - Bodily Injury And Property Damage Liability**
> 1. **Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>       **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>       **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>       **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

26. The Policy contains the following definitions which are relevant to the claims of MCGAUGHEY in the Underlying Action:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

27. Crucial to the analysis of coverage for the Underlying Action, the above definition of "Employee" is replaced pursuant to Endorsement **BG-G-119 04 09**, **DEFINITION –EMPLOYEE** as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DEFINITION - EMPLOYEE**

This endorsement modifies insurance provided under the following:

GARAGE COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph **C.** of this endorsement replaces Definition **5.** of **Section V — Definitions** under the Commercial General Liability Coverage Form.

B. Paragraph **C.** of this endorsement replaces Definition **G.** of **Section VI — Definitions** under the Garage Coverage Form.

C. "Employee" means a person working for salary or wages, or any substitute for salary or wages, as compensation in any manner by any insured, under any contract of hire, express or implied, oral or written, where the insured, as employer, has the power or right to control and direct the employee. "Employee" includes a person hired by the hour, day or any other irregular or intermittent period. "Employee" includes a "leased worker" or "temporary worker".

28. The Policy contains the following policy exclusions that removes any duty:

**2. Exclusions**

This insurance does not apply to:

  e. **Employer's Liability**

   "Bodily injury" to:

   **(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

   This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

   This exclusion does not apply to liability assumed by the insured under an "insured contract"

29.  The Policy designates the following as an Insured:

**SECTION II — WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

 **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

 **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

30.  The Policy also contains two relevant Assault and Battery Endorsements. The first Endorsement provides limited coverage ($100,000) under certain circumstances. Specifically, Endorsement **IFG-G-0088 12 13** provides:

**LIMITED ASSAULT, BATTERY OR OTHER PHYSICAL
ALTERCATION LIABILITY COVERAGE
(LIMIT OF LIABILITY INCLUDES DEFENSE COSTS)**

This endorsement modifies insurance provided under the following:

 COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

| Description | Class Code | Limit of Liability Includes Defense Costs |
|---|---|---|
| Assault, Battery, or | 19263 | Each Occurrence $ |

8

| Other Physical Altercation | | 100,000 |
|---|---|---|

**A. Coverage D — Limited Assault, Battery Or Other Physical Altercation Coverage** is added to **Section I — Coverages:**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies arising out of "assault", "battery" or other physical altercation.

   We will have the right and duty to defend the insured against any "suit" seeking these damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages arising out of "assault", "battery" or other physical altercation is limited to the amount stated in the Schedule above and as described in Paragraph **3. Limits Of Insurance** of this endorsement; and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments; settlements; or defense fees or costs under Coverage **D**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B**. Such Supplementary Payments shall also apply to Coverage **D**, except to the extent that such Supplementary Payments are limited as amended in Paragraph **3. Limits Of Insurance** of this endorsement.

   b. This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" arising out of "assault", "battery" or other physical altercation but only if;

   (1) The "assault", "battery" or other physical altercation was committed at the Scheduled Premises listed above; but if no entry is made above, then only those premises as scheduled in the policy; and

   (2) "Bodily injury", "property damage" or "personal and advertising injury" arising from the ''assault", "battery" or other physical altercation takes place during the policy period.

31. The Limited Coverage is subject to the following exclusions:

2. **Exclusions**

   The following exclusions apply to **Coverage D — Limited Assault, Battery Or Other Physical Altercation Coverage**:

9

This insurance does not apply to:

**a. Assault, Battery Or Other Physical Altercation Committed By Any Insured**

"Assault", "battery" or other physical altercation committed by any insured or agent of any insured, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault", "battery" or other physical altercation, and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

**d. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business;

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

32. The Endorsement includes the following Definition:

**4. DEFINITIONS**

The following definitions apply to **Coverage D — Limited Assault, Battery Or Other Physical Altercation Coverage**:

"Assault" means any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm.

"Battery" means physical contact with a person without his or her consent that entails some injury or offensive touching.

33. The Policy also includes Endorsement **BG-G-042 12 11**, **Exclusion – Assault, Battery or Other Physical Altercation** which excludes coverage as follows:

**EXCLUSION - ASSAULT, BATTERY OR OTHER PHYSICAL ALTERCATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**D.** This insurance does not apply to:

**a. Assault, Battery Or Other Physical Altercation**

"Bodily injury" or "property damage":

    **(1)** Expected or intended from the standpoint of any insured.

    **(2)** Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.

    **(3)** Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."

    **(4)** Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

**G.** The exclusions added in paragraphs D, E and F of this endorsement apply to all acts or omissions, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation, and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

**H.** The following are added to the Definitions Section of this policy:

"Assault" means any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm.

"Battery" means physical contact with a person without his or her consent that entails some injury or offensive touching.

34. Finally, the Policy provides coverage for medical expenses under Coverage C as follows:

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

    **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

        **(1)** On premises you own or rent;

        **(2)** On ways next to premises you own or rent; or

        **(3)** Because of your operations;

35. Said coverage is subject to the following exclusions

**2. Exclusions**

We will not pay expenses for "bodily injury":

    **a. Any Insured**

        To any insured, except "volunteer workers".

    **b. Hired Person**

>   To a person hired to do work for or on behalf of any insured or a tenant of any insured.
>
>   d. **Workers Compensation And Similar Laws**
>
>   To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.
>
>   \* \* \* \*

36. Under Florida law, the duty to defend is broader than the duty to indemnify. *Smith v. General Accident Ins. Co. of America*, 641 So. 2d 123 (Fla. 4th DCA 1994). In determining whether a insurer has a duty to defend, courts are required to apply the "eight corners rule" – the four corners of the applicable insurance policy and the four corners of the underlying Complaint. *See Addison Ins. Co. v. 4000 Island Blvd. Condo. Ass'n, Inc.*, 2017 WL 6616690, *6 (11th Cir. 2017).

37. In *Mt. Hawley Ins. Co. v. Miami River Port Terminal*, the Southern District of Florida an insurance carrier's duty to defend and said:

>   Whether an insurer has a duty to defend "is determined by examining the allegations in the Complaint filed against the insured." *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F. 2d 1402, 1405 (11th Cir. 1983) (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors Inc.*, 358 So. 2d 533, 536 (Fla. 1978)). **"To determine whether [the insurer] ha[s] a duty to defend [the insured], the Court looks only to the allegations in the Underlying Complaint and the terms of the Policy."** *Evanston Ins. Co. v. Haven S. Beach, LLC*, 152 F. Supp. 3d 1370, 1374 (S.D. Fla. 2015) (emphasis added). If the Underlying Complaint "alleges facts that fairly and potentially bring the suit within policy coverage," the insurer has a duty to defend its insured. *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. 2005) (citations and internal punctuation omitted). By contrast, "**[w]here the allegations in the Complaint show that no coverage exists or a policy exclusion applies, no duty to defend arises."** *James River Ins. Co. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354 (S.D. Fla. 2012) (citing *Posigian v. Am. Reliance Ins. Co. of N.J.*, 549 So. 2d 751, 753 (Fla. 3d DCA 1989)). "The allegations of the Complaint govern the duty to defend even if they may be factually incorrect or without merit," *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So. 2d 907, 910 (Fla. 3d DCA 1997), but if those allegations leave any doubt as to the duty to defend, the question must be resolved in favor of the insured, *Trizec Props. Inc. v. Biltmore Const. Co.*, 767 F. 2d 810, 811-12 (11th Cir. 1985).

*Mt. Hawley Ins. Co. v. Miami River Port Terminal*, 228 F. Supp. 3d 1313, 1321-1322 (S.D. Fla. January 6, 2017)(emphasis added).

38. When courts construe insurance policies, they should read the policies as a whole, thereby giving every provision its full meaning and operative effect. *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 30 (Fla. 2d DCA 2004) (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). Additionally, a single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders. *Harrington v. Citizens Prop. Ins. Corp.*, 54 So. 3d 999, 1002 (Fla. 4th DCA 2010).

39. Like other contracts, a court should only resort to rules of construction in interpreting an insurance contract when the language is ambiguous; otherwise, it should apply the plain and unambiguous meaning of the policy's language. *Sunshine State Ins. Co. v. Jones*, 77 So. 3d 254 (Fla. 4th DCA 2012). Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written. In construing insurance contracts, "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Courts should "avoid simply concentrating on certain limited provisions to the exclusion of the totality of others." However, "[p]olicy language is considered to be ambiguous... if the language 'is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage.'" *Washington Nat'l Ins. Corp. v. Ruderman*, 2013 Fla. LEXIS 1388.

40. Florida law generally considers the term "arising out of" to be unambiguous. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005). Proximate cause is not required; instead, the term refers to "some causal connection, or relationship" beyond "mere coincidence." *Id.* at 539-40. Thus, "arising out of means something broader than

13

pure causation." *Burlington Ins. Co., Inc. v. Normandy Gen. Partners*, 560 Fed Appx. 844, 848 (11th Cir. 2014).

41. Based upon the allegations in the Complaint filed in the Underlying Action, The Complaint further alleges at the of the subject accident, the Plaintiff was an off-duty police officer with City of Pensacola Police Department working security at the Seville Quarter complex and was compensated by the Insured for his services.

42. Pursuant to Endorsement **BG-G-119 04 09** in the Policy, the definition of "Employee" is changed from its original policy definition to, "mean a person working for salary or wages, or any substitute for salary or wages, as compensation in any manner by any insured, under any contract of hire, express or implied, oral or written, where the insured, as employer, has the power or right to control and direct the employee. 'Employee' includes a person hired by the hour, day or any other irregular or intermittent period. 'Employee' includes a 'leased worker' or 'temporary worker'." Based on this modified definition of "Employee" it is clear and unambiguous that at the time and place of the subject accident MCGAUGHEY was an "Employee" of ROSIE O'GRADY'S as expressly and clearly defined by the Policy. *See*, *The Burlington Insurance Company v. Normandy General Partners, LLC, etc.*, 2013 WL 1891277 (S.D. Fla. 2013).

43. As such, the claims of MCGAUGHEY against ROSIE O'GRADY'S are excluded under Exclusion **e. Employer's Liability**, which excludes coverage for "Bodily injury" to an "employee" of the insured arising out of and in the course of employment by the insured or while performing duties related to the conduct of the insured's business.

44. The aforementioned exclusion further provides, "[t]his exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury."

45. The Policy also contains Endorsement, **BG-G-042 12 11**, which excludes coverage for Assault and/or Battery under specific circumstances. This exclusion not only excludes coverage for an Assault or Battery committed by any person, but also excludes coverage for injuries arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or **act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation**. (Emphasis added).

46. Under Florida law, an insurer's duty to indemnify is determined by analyzing the policy coverages in light of the actual facts of the underlying case. *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.,* 227 F. Supp. 1248, 1258 (M.D. Fla. 2002), *citing State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So. 2d 1072, 1077 (Fla. 1998). Thus, the duty to indemnify is narrower than the duty to defend, and there must be a determination coverage exists before a duty to indemnify will arise. *Illinois Ins. Exchange v. Scottsdale Ins. Co.*, 679 So. 2d 355 (Fla. 3rd DCA 1996).

47. It is undisputed based on the allegations contained in the Complaint filed in the Underlying Action as well as the sworn deposition testimony of MCGAUGHEY, the subject incident and injuries sustained by MCGAUGHEY occurred during the act of preventing, suppressing and/or halting a physical confrontation and/or altercation.

48. Although the allegations asserted against ROSIE O'GRADY'S are based upon its alleged negligence, it is clear from the allegations that MCGAUGHEY claim against ROSIE

O'GRADY'S is its alleged failure to prevent or suppress the physical assault that occurred on July 16, 2017.

49. Accordingly, TBIC has no duty to defend and/or indemnify ROSIE O'GRADY'S for the claims of MCGAUGHEY in the Underlying Action.

50. To the extent the Policy provides coverage for medical expenses coverage, multiple exclusions contained in the Policy exclude coverage for any such claim. Specifically, based on the Policy definition of an Insured, MCGAUGHEY is an Insured as defined in the Policy and as such, coverage for medical expenses would be excluded.

51. In addition, based on the allegations contained in the Complaint filed in the Underlying Action, the **Hired Person** exclusion would likewise apply. Finally, it is undisputed that MCGAUGHEY applied for and received workers' compensation benefits from the City of Pensacola. As such, the **Workers' Compensation** exclusion would apply to preclude coverage for medical expenses coverage.

52. Florida courts generally find no coverage under an assault and battery exclusion where the alleged negligence arose from the assault and battery. See, e.g., *Founders Ins. Co. v. Cortes-Garcia*, 2012 U.S. Dist. LEXIS 89969, 2012 WL 2505917 at *6.; *Century Sur. Co. v. Seductions, LLC*, 609 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009) (citing *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d at 539-40), affirmed, 349 Fed. Appx. 455 (11th Cir.) (Unpublished); *Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd.*, 721 So. 2d 402, 404 (Fla. 3d DCA 1998) (holding that negligence claims against store owner for failing to maintain premises or provide adequate security arose out of an assault and battery where patron was robbed at knife point and stabbed, ultimately triggering the policy's assault and battery exclusion); *Miami Beach Entm't, Inc. v. First Oak Brook Corp. Syndicate*, 682 So. 2d 161, 162

(Fla. 3d DCA 1996) (holding summary judgment based upon policy exclusion proper where a claim based on negligence arose out of assault and battery).

53. Florida courts "hew closely to the language of the policy exclusions and determine the exclusions extend to negligence arising out of the assault and battery." *Doe v. Hudson Specialty Ins. Co.*, 16-24176-CIV, 2017 U.S. Dist. LEXIS 36380, 2017 WL 979263, at *4 (S.D. Fla. Mar. 14, 2017), affd, 719 Fed. Appx. 951 (11th Cir. 2018) (citing *Britamco Underwriter's, Inc. v. Zuma Corp.*, 576 So. 2d 965, 965 (Fla. 5th DCA 1991)).

54. Accordingly, based on the allegations contained in the Complaint and sworn deposition testimony of MCGAUGHEY, the injuries he sustained for which he seeks damages from ROSIE O'GRADY'S, is excluded pursuant to the terms of the **Assault, Battery or Other Physical Altercation Exclusion**. As such, TBIC has no obligation to indemnify ROSIE O'GRADY'S for any liability that may be assessed against it in the Underlying Action.

54. Further, TBIC would have no obligation under the Policy to continue to provide ROSIE O'GRADY'S with a defense in the Underlying Action.

55. Insomuch as TBIC has been providing ROSIE O'GRADY'S with a defense under a Reservation of Rights pursuant to Florida law, it is entitled to recover the expenses it has incurred in defending ROSIE O'GRADY'S in the Underlying Action.

56. TBIC has a present *bona fide* need for a declaration with respect to its rights and obligations under the Policy as to its obligation to indemnify and defend ROSIE O'GRADY'S for the claims presently being made by MCGAUGHEY in the Underlying Action.

57. The facts necessary for this Honorable Court to render TBIC'S Declaration of Rights are set forth in this Petition, the Exhibits, or are ascertainable by this Court.

58. TBIC'S rights under the Policy and Florida law are dependent on this Honorable Court's findings of fact and/or application of applicable statutory and case law.

59. The Respondents' interest in this Declaration of Rights is actual, present, adverse, and antagonistic in fact and/or in law to TBIC'S interest.

60. TBIC seeks relief in order to determine and enforce contractual/legal rights under the Policy, not merely to seek legal advice from this Honorable Court.

WHEREFORE, THE BURLINGTON INSURANCE COMPANY hereby respectfully requests this Honorable Court enter a judgment in its favor and against the Respondents:

a) Declaring that MCGAUGHEY was an employee of ROSIE O'GRADY'S at the time and date of the subject incident as defined in the Policy;

b) Declaring that the **Assault, Battery or Other Physical Altercation Exclusion** contained in the Policy is applicable to exclude coverage for any of the claims being asserted against ROSIE O'GRADY'S INC. in the Underlying Action;

c) Declaring that the **Employer's Liability Exclusion** contained in the Policy is applicable to exclude coverage for any of the claims being asserted against ROSIE O'GRADY'S INC. in the Underlying Action;

d) Declaring medical expenses coverage is excluded under the Policy **Hired Person** and **Workers' Compensation** exclusion.

e) Declaring TBIC has no duty to indemnify ROSIE O'GRADY'S INC. for any liability that may be assessed against it in the Underlying Action;

f) Declaring TBIC has no duty to defend ROSIE O'GRADY'S INC. for any of the claims begin asserted against it in the Underlying Action;

g) Declaring the Respondents are estopped from pursuing a claim, defense and/or indemnity against TBIC for any claims being made in the Underlying Action; and

h) Order ROSIE O'GRADY'S, INC. to reimburse TBIC for all expenses related to the defense of the underlying action, including attorneys' fees and costs, as well as it attorneys' fee and costs associated with prosecuting this action.

THE BURLINGTON INSURANCE COMPANY respectfully requests such further relief as this Court may deem appropriate.

DATED this 1st day of July, 2022.

                                              **Respectfully Submitted,**

                                              **MARSHALL DENNEHEY WARNER**
                                                  **COLEMAN & GOGGIN, P.C.**

By:   /s/ Michael A. Packer
        Michael A. Packer
        Florida Bar No. 121479
        mapacker@mdwcg.com
        2400 East Commercial Blvd.
        Suite 1100
        Ft. Lauderdale, Florida 33308
        Telephone: (954) 847-4920
        Facsimile: (954) 627-6640
        pagarcia@mdwcg.com
        mmalvarez@mdwcg.com
        pleadingsFTL@mdwcg.com

        Attorneys for THE BURLINGTON
        INSURANCE COMPANY